Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2663 | **DATE** | 3/15/2000 |
| **CASE TITLE** | AVENT AMERICA, INC., et al vs. PLAYTEX PRODUCT, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/17/00 at 9:15 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court adopts the Report and Recommendation of Magistrate Judge Keys and denies the plaintiffs' motion for a preliminary injunction.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | MAR 1 6 2000 date docketed |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | |
| ✓ | Copy to judge/magistrate judge. | | |
| | | | date mailed notice |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AVENT AMERICA, INC., an Illinois corporation, and CANNON RUBBER LIMITED, an English corporation, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 98 C 2663 Paul E. Plunkett, Senior Judge |
| PLAYTEX PRODUCTS, INC., a Delaware corporation, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Magistrate Arlander Keys' Report and Recommendation ("Report") recommending that the Court deny Avent America, Inc. ("Avent") and Cannon Rubber Limited's ("Cannon") motion for a preliminary injunction to enjoin defendant from using the name "VentAire" to sell baby feeding bottles. Avent and Cannon have filed timely objections to the Report and defendant Playtex Products, Inc. ("Playtex") has filed a timely response to plaintiffs' objections in accordance with Fed. R. Civ. P. 72. For the reasons provided in this Memorandum Opinion and Order, the Court finds Avent's objections without merit and adopts the Report in its entirety.



## Facts

This is the second time the Court finds itself in the position of reviewing a dispute between these parties over the trademarks used to sell baby bottles. As set forth in exhausting detail in our June 24, 1999 Memorandum Opinion and Order ("June 1999 Opinion"), the first dispute involved Playtex's use of the name "Avance" to sell a baby bottle with an anti-vacuum feature that competed with Avent and Cannon's product called "Avent." In that opinion, we accepted with some modifications Magistrate Keys' Report that Playtex's use of the term "Avance" was likely to cause confusion between its Avance bottle and plaintiffs' Avent bottle and because Avent and Cannon had demonstrated an inadequate remedy at law and irreparable harm that Playtex should be enjoined from using the name "Avance" for its baby bottle. Playtex, to its credit, did not appeal but instead set about remedying the situation. Under this Court's supervision, it embarked on a program to remove the offending product from retailer shelves and create a new name and label for its product. Playtex selected and advertised "VentAire" as the new name for its bottle. Avent and Cannon were not mollified. Having thrown down the gauntlet, they chose to continue the battle. They amended their complaint and moved for a second preliminary injunction to stop Playtex from going forward with their new name. Again, Avent and Cannon allege that Playtex's use of "VentAire" creates a likelihood of confusion in the baby bottle buying public as to the origin and source of Playtex's products and as to a connection between the VentAire and Avent bottles. We referred this matter again to Magistrate Keys, who conducted an evidentiary hearing at the end of September 1999.

As more fully explained later in our discussion, we need not address all of the facts again because they simply do not matter. Instead, we shall review only those facts that have changed from

the Court's initial review of the case. The most efficient way to do that is to address those facts in the context of our specific examination of the legal issues at hand in round two of this legal action.

## Discussion

This matter was referred to Magistrate Judge Keys pursuant to Rule 72(b) of the Federal Rules of Civil Procedure. This Court is required to "make a de novo determination . . . of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*

There are several factors that a court must weigh when considering a motion for preliminary injunction. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997). "First, it must determine whether the moving party has demonstrated . . . some likelihood of prevailing on the merits, . . . an inadequate remedy at law and irreparable harm if the injunction does not issue." *Id.* "If the party has done so, the court must next consider . . . the irreparable harm the nonmovant will suffer if the injunction is granted balanced against the irreparable harm to the movant if the relief is denied, and . . . the effect granting or denying the injunction will have on nonparties." *Id.*

"In the preliminary injunction context, a 'likelihood of success' exists if the party seeking injunctive relief shows that it has a 'better than negligible' chance of succeeding on the merits." *Id.* (quoting *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir. 1988)). In a trademark infringement case, "the movant shows a likelihood of success by

establishing that . . . (1) he has a protectable mark, and . . . (2) that a "likelihood of confusion" exists between the marks or products of the parties." *Id.* at 1115.

The first prong has been satisfied because it is undisputed that Avent has a protectable mark. As we discussed in our first opinion, the record shows that Avent registered its trademark in the United States in 1986. (6/24/99 Mem. Op. & Order at 6.) As we noted, registration of the mark "constitutes prima facie evidence of the ownership and validity of the mark." *Brach Van Houten Holding, Inc. v. Save Brach's Coalition for Chicago*, 856 F. Supp. 472, 475 (N.D. Ill. 1994). Therefore, the Court need only address the likelihood of confusion prong to determine whether plaintiffs have a likelihood of success on the merits.

In this circuit, a court considers several factors to determine whether a likelihood of confusion exists in trademark cases: (1) degree of similarity between the marks in appearance and suggestion; (2) similarity of the products for which the name is used; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of defendant to palm off his product as that of another. *Helene Curtis Indus., Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1330 (7th Cir. 1977). "None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved." *International Kennel*, 846 F.2d at 1087.

The magistrate judge correctly concluded that four of the seven factors were unaffected by the new name and, as a result, our findings in our June 1999 Opinion apply to the following factors: (1) similarity of the products; (2) area and manner of concurrent use; (3) degree of care likely to be exercised by consumers; and (4) strength of complainant's mark. According to our opinion, three

of the four factors were found to favor plaintiffs' case. The one factor of these four that does not favor plaintiffs' case is the degree of care likely to be exercised by consumers, which we found was a high degree of care because of the nature of product and the end-users at issue (babies). (6/24/99 Mem. Op. & Order at 12.) Plaintiffs do not dispute the magistrate judge's decision to incorporate our findings on these points into his decision. However, they do attack the magistrate judge's findings on the remaining three factors: similarity of the marks in sound, appearance and suggestion; actual confusion; and defendant's intent to "palm off" plaintiffs' product. We shall address each in turn.[1]

A. **Similarity of Marks**

Avent and Cannon argue that the magistrate judge failed to recognize the aural, visual and suggestive similarity of the words "Avent" and "VentAire." Specifically, plaintiffs' objection avers that the magistrate judge improperly disregarded the findings of its expert, Professor Alan Kaye ("Kaye"). (Pls.' Objections at 1, 21-33.) The Court finds plaintiffs' objections without merit.

As plaintiffs stress, and as we previously discussed in our June 1999 Opinion, it is proper to analyze the similarity of the words "Avent" and "VentAire" with an emphasis on the aural similarity because the parties' baby bottle products are often sold through word-of-mouth referrals. (*See* Pls.' Reply at 10; 6/24/99 Mem. Order & Op. at 8-10.) In determining similarity, "the marks must be compared . . . in light of what occurs in the marketplace, not in the courtroom." *James Burrough*

---

[1] While we carefully considered all of plaintiffs' objections, we have addressed only those objections that have any merit. All others are rejected. Furthermore, several pages of plaintiffs' Objection memorandum, totaling 57 pages with 45 footnotes in extra small font type, simply revisited our ruling in the "Avance" phase of this litigation.

*Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 275 (7th Cir. 1976). Thus, because the importance of word-of-mouth referrals of the parties' products is uncontroverted, we begin our analysis with the similarity in sound between the two word marks.

### 1. Sound

Plaintiffs argue that the aural similarity of the two words is plain when one considers how consumers would use the word marks in every day spoken language. First, they argue that a consumer would walk into a store asking for "a VentAire bottle,"[2] which could lead to confusion because the clerk may interpret the inquiry as one for "a Avent air bottle."[3] (Pls.' Objection at 19, 26.) In a different scenario, Plaintiffs assert that a typical purchaser may ask a store clerk for an Avent bottle and include a function of the bottle, such as "an Avent less-air bottle" or "an Avent air reducing bottle." (*Id.* at 19, 24-26.) Again plaintiffs assert that a store clerk (either because he or she is not paying attention to the customer's inquiry or because he or she does not have familiarity with his or her employer's inventory) could somehow interpret that request as one for a VentAire bottle instead of the requested Avent bottle. Plaintiffs suggest that these scenarios are in sync with this Court's reasoning in its June 1999 Opinion and demonstrate the strong likelihood of confusion of the two word marks when used in every day language. We reject plaintiffs' attempt to equate

---

[2] Plaintiffs additionally assert confusion may occur when the speaker fails to use the indefinite article "a," replacing it with "uh," so that he or she asks for "uh VentAire bottle." (Pls.' Objection at 27.)

[3] The magistrate judge noted that in this example, plaintiffs fail to account for the grammatically correct indefinite article in this case, which should be "an" because it precedes a word that begins with a vowel.

these scenarios with our discussion in our June 1999 Opinion that the consuming public is likely to use the word mark Avent in its possessive form, such as "Avent's bottle is the best on the market." (6/24/99 Mem. Op. & Order at 10.) In that situation, we found that there was a "great likelihood that the public would use Avent in the possessive form just as it does with any other brand name." (*Id.*) Thus, in that case, we found that the possessive form of "Avent" sounded extremely similar to Playtex's mark "Avance." In this instance, however, we do not believe, and plaintiffs have given us no reasons to believe, that confusion would likely result from these various scenarios because they all depend on the unlikely or infrequent situation that an ill-informed, lazy and/or hearing-impaired store clerk will be on the other end of the consuming public's inquiry. These scenarios also leave no room for the likely possibility that the clerk would merely direct the consumer to the appropriate aisle, leaving the customer to look for the product on her own.

Plaintiffs also assert that the magistrate judge improperly disregarded its expert Kaye's opinion that consumers would likely confuse the sound of the two word marks. Kaye, who has 30 years experience in the field of linguistics and phonetics and who provided expert testimony in the first hearing on the "Avance" mark, opined that this confusion would likely arise because the word "vent" is a prominent syllable in both the "Avent" and "VentAire" terms, that people would process the word "vent" and that for a variety of linguistic reasons the names are phonetically similar as used in the market. (R. at 87-95.)[4]

The magistrate judge rejected many of Kaye's theories because he attempted to reduce both of the word marks into the word "vent," a word over which Avent claims no exclusive control. For

---

[4] The record ("R.") in this phase of the litigation is comprised of the transcript and exhibits from the proceedings before Magistrate Keys on September 29 and 30, 1999.

example, in one of Kaye's theories, he asserts that the deleted or minimized schwa in the beginning of the word "Avent" reduces Avent's strong trademark simply to the word "vent." (*Id.* at 87-88.) Plaintiffs explain that the schwa sound, like the schwa in the word "about," is often dropped or minimized in the minds and from the mouths of the American public so that the word becomes "'bout." (Pls.' Objection at 24.) According to Kaye, this also occurs with the term "Avent," reducing it to the word "vent." (R. at 87-88.)

Similarly, though due to a different pronunciation phenomenon, Kaye opines that the word mark "VentAire" is reduced to the word "vent" when spoken in every day English. (*Id.* at 94-95.) According to Kaye, this occurs because East Coast and Southern dialects often delete the letter "r" in everyday speech. (*Id.* at 94.) Plaintiffs give the example of an East Coast resident who pronounces "park the car" as "paak the caa." (Pls.' Objection at 27.) Thus, these residents would pronounce "VentAire" as "VentA," which according to Kaye is incredibly similar to "Avent." In fact, the terms "Avent" and "VentA" become identical, according to Kaye's theory, by recognizing another linguistic occurrence: the spoonerism.[5] A spoonerism is an unintentional transposition of sounds of two or more words. *See* WEBSTER'S II NEW RIVERSIDE UNIV. DICTIONARY (1994). Thus, Kaye opines that due to a "visual spoonerism" or even dyslexia, the American public may view "VentA" as "Avent." (R. at 95-96.)

We agree with the magistrate judge that Kaye's testimony is incredible, as we also find it difficult to follow the series of leaps one must take in order to hear both word marks spoken as the

---

[5] Kaye explained that the term "spoonerism" was named after Oxford professor Reverend Spooner, who instead of introducing the "Dear Old Queen" of England, announced her as the "Queer Old Dean." (R. at 95.)

word "vent." Furthermore, the magistrate found that Kaye's testimony was overly animated and that of an advocate, not merely a dispassionate expert. (Report at 23-24.) While we did not have an opportunity to observe this witness' testimonial demeanor, we have carefully reviewed the record and agree that some of Kaye's statements tend to chip away at his credibility. Specifically, we find incredible his belief that Playtex was attempting to deliberately disguise its product as Avent's bottle by naming it "VentAire" (R. at 98), considering the number of linguistic and phonetic layers one must peel away to result in similar sounding marks, and the fact that Playtex never employed or consulted a linguistic or phonetic expert when selecting the name "VentAire." (R. at 240-41.) The plaintiffs' expert's credibility was also damaged by his conclusions on the relationship between the aural similarity of "Avent" and "VentAire." It borders on fantasy to accept that such a strange combination of schwas, deleted "r's," spoonerisms, unlikely sentence patterns and/or inattentive listener's interpretations would be so common to result in a similarity in sound between the marks "Avent" and "VentAire." While all this may not be "through the looking glass," it is dangerously close to George and Ira Gershwin's thought, "You like tomato and I like tomahto," and we believe their solution is the best solution -- "Let's Call the Whole Thing Off." Thus, we agree that these word marks do not sound similar.

### 2. Appearance

We agree with the magistrate judge's opinion that plaintiffs failed to present enough concrete evidence of a similarity in appearance between the marks. Plaintiffs argue that the packaging in which Playtex sells VentAire bottles adds to the confusion because the "re" is obscured by the plastic blister pack. (Pls.' Objection at 27-28.) While the Court agrees that Playtex's packaging does not

clearly show the entire word mark "VentAire" (Pls.' Ex. 2), we believe that there is not enough evidence to show that consumers would confuse the word marks when looking at the packaging. In fact, the blister packaging only appears to obscure the last letter "e," so that at a glance the name may appear as "VentAir." This conclusion is furthered by the fact that Playtex's brand name is prominently displayed in a red banner on the packaging (Pls.' Ex. 2), further reducing the similarity of the word marks in appearance. *See Keystone Camera Prods. Corp. v. Ansco Photo-Optical Prods. Corp.*, 667 F. Supp. 1221, 1232 (N.D. Ill. 1987) (the prominent display of manufacturers' names with the mark on the products significantly reduces the likelihood of confusion).

### 3. Suggestion

Finally, plaintiffs argue that the similarity in the names in suggestion is overwhelming because, in their opinion, Playtex's word mark "VentAire" plays off of the prominent term in "Avent" and the features of the Avent bottle. (Pls.' Objection at 36-37.) As discussed later herein, Playtex chose the name "VentAire" to capture the function of its bottle, that its anti-vacuum feature vents air away from the baby. While technically a valve, the magistrate judge pointed out several dictionary definitions that demonstrate that the term "vent" is appropriate to describe in layman's terms a function of Playtex's bottle. Plaintiffs also argue that the word mark "VentAire" also suggests a salient feature of plaintiffs' "less-air" marketing campaign. (Pls.' Objection at 36-37.) Again, plaintiffs do not own exclusive rights to the terms "vent" and "air," and, as seen later herein, the term "vent" is widely used in trademarks by third parties, entitling each trademark registrant to only a modicum of protection for its specific use.

Finally, as we pointed out in our July 1999 Opinion, "Avent" signifies an advent or arrival of something momentous and "VentAire" signifies an opening for the passage or escape of a gas, in this case air. *See* WEBSTER'S II NEW RIVERSIDE UNIV. DICTIONARY (1994). As a result, the Court finds that the marks' connotations are not similar.

Therefore, the Court finds the "Avent" and "VentAire" marks are not similar because: (1) Avent relies heavily on word of mouth referrals and there is very little similarity between the aural pronunciation of "Avent" and "VentAire"; (2) the appearance of the word marks, even when packaged, are not so similar to cause a likelihood of confusion; and (3) the suggestion of the marks are not similar. The Court thus finds Avent and Cannon's objection regarding the similarity of the marks without merit.

B.   **Actual Confusion**

Avent and Cannon argue that the magistrate judge improperly held this factor against them in his decision. Specifically, plaintiffs assert that the magistrate judge should not have considered this factor at all because it is too early in the life of the VentAire product to produce evidence of actual confusion. (Pls.' Objection at 37-40.) We disagree with plaintiffs' contention that the magistrate judge held this factor against them. (*Id.* at 40.) Instead, he determined that this factor did not weigh in favor of plaintiffs because there was no reliable evidence at the time of the hearing to support actual confusion. This was not, in our opinion, a "strike" against plaintiffs' case and not dispositive at all in the outcome of the magistrate judge's opinion that plaintiffs cannot show a likelihood of success on the merits in their trademark infringement action. Rather, as we see it, the lack of evidence on actual confusion merely represents a neutral factor, neither favoring nor

disfavoring plaintiffs' ability to show likelihood of confusion. Thus, plaintiffs' objection is without merit.

C.  **Intent**

The magistrate judge found that there was no evidence presented at the evidentiary hearing to support plaintiffs' claim that Playtex intended to confuse consumers by selecting the word mark "VentAire" for its baby bottle product. (Report at 35-36.) The thrust of Avent and Cannon's objection is that the magistrate judge failed to consider evidence from the first Avent preliminary injunction hearing where we found probative evidence that Playtex intended to confuse customers into thinking that the Avance bottle was connected with Avent when it chose a name that was strikingly similar to that of Avent's competing product. The evidence of Playtex's intent in the selection of the "Avance" word mark has no role in the preliminary injunction request before us today on the "VentAire" word mark. Plaintiffs have offered no evidence or reason to convince us that Playtex's past "bad" intent in the selection of the Avance mark continues to exist in the selection of the new mark, "VentAire." It is just as likely that Playtex, having learned its lesson, has turned over a new leaf. Accordingly, because plaintiffs have made several other objections to the magistrate's review of Playtex's intent, we shall only review the evidence regarding the selection of the "VentAire" word mark.

As the magistrate judge exhaustively detailed in his report (*see* Report at 5-20) and as reflected in the testimony of several witnesses, Playtex's process for selecting the new mark "VentAire" for its anti-vacuum feeding bottle was free from intent to confuse the public as to the source of its baby bottle. Mr. Richard Powers, President of Playtex's Personal Products Division,

testified that he gave the order to begin the process to select a new name for its Avance baby bottle after he had read the magistrate judge's Report to grant plaintiffs' motion for a preliminary injunction on the "Avance" word mark.[6] (R. at 252-53.) The responsibility for generating new names for the anti-vacuum bottle fell on Ms. Jane Wadler, who at the time was Playtex's Marketing Director of Baby Feeding. (*Id.* at 205-206). Wadler, who had not been involved in the selection of the "Avance" word mark, was told by Powers that the new name should not lead to any confusion with the "Avent" word mark because Playtex did not want to continue to litigate about the trademark associated with its baby bottle. (*Id.* at 206-207, 256.) Wadler did not read Magistrate Keys' Report on the "Avance" mark and no one at Playtex explained to her that the magistrate noted that the term "Avent" could be suggestive of a vent-like system, even though it was technically a valve system in the bottle. (*Id.* at 223-24.) However, Powers and Playtex's in-house and outside legal counsel had reviewed the magistrate judge's Report and Powers was the ultimate decision maker on the new name. (*Id.* at 259.)

In February 1999, Wadler began the new name selection process by holding a brain-storming session in her office with two colleagues. (*Id.* at 206.) They came up with a list of different names by using word association with different descriptive terms such as "air, vent, flow, bottle." (*Id.* at

---

[6] Powers testified that he began the search process for a new name soon after the magistrate's Report was issued recommending a preliminary injunction on Playtex's "Avance" mark. (R. at 253-54.) He did so prior to this Court's ruling on their objections to the magistrate's Report because he "felt that the [magistrate's] recommendation had been clear enough that it was prudent for us to make the change at that time." (*Id.* at 254.) Plaintiffs, throughout their objections, charge that this move and Playtex's alleged placement of an advertisement carrying the new "VentAire" name prior to this Court's ruling on the "Avance" mark is evidence that Playtex was thumbing its nose at this Court. We disagree, finding no reason why Playtex should be penalized for searching for and selecting a new name when they saw the writing on the wall for their "Avance" mark.

206-208, Def.'s Ex. 11.) They operated under the criteria that the new name must sound "very different than Avent," must be short, memorable, and pronounceable, and must describe the "point of difference" of Playtex's anti-vacuum feature. (*Id.* at 206, 209.) Wadler and her colleagues then narrowed the list down to eleven names, keeping in mind the criteria with which she started. (*Id.* at 209-210, Def.'s Ex. 12.) She submitted the following names to Playtex's in-house legal department: Advance; Advance Flo; Advanced Flow; Advantage; Avance Flo; Airvance; Vantage; Health Vent; Vent Aire; Sure Vent; Ventright. (*Id.* at 210; Def.'s Ex. 12.)

Playtex's legal department sent this list to its outside trademark counsel, Jeffrey Schwab, a partner at Abelman, Frayne & Schwab who has worked almost continuously for Playtex in one way or another since 1969. (*Id.* at 136, 138-39.) Playtex's outside counsel initially rejected the names Advance, Advance Flo, Avance Flo, Airvance based on a third-party's use of the word mark "Advance." (Def.'s Ex. 8.) It then conducted a prescreen search of the federal registry of trademarks to determine whether any of the remaining names were identical or nearly identical to a federally registered mark. (R. at 141, 148-49; Def.'s Ex. 7.) Based on the prescreen report, Schwab informed Playtex that it should not pursue further investigation of Advanced Flow and Advantage. (*Id.* at 148-51; Def.'s Ex. 7.) Wadler was informed shortly thereafter that Playtex must avoid Advance, Advance Flo, Avance Flo, Airvance, Advanced Flow and Advantage. (R. at 211.) After reviewing the remaining names in her mind, Wadler decided to propose the word marks Vent Aire, Sure Vent, and Ventright to management. (*Id.* at 212.)

Schwab testified that his firm conducted several detailed searches on behalf of Playtex for potential conflicts with the term "Vent-Aire" for its anti-vacuum baby bottle. (*Id.* at 153-58.) The first search reviewed the federal, state, common law (*i.e.*, yellow pages listings), and Internet domain

name databases for any word marks similar to the term "Vent-Aire" in the same or similar product categories, or classes. (*Id.* at 143, 153.) The report generated from this search listed other word marks in descending order of similarity. (*Id.* at 143, 154; Def.'s Ex. 12.) Based on this report, it was discovered that several marks existed in the same and different classes of goods that contained the term "vent" and the term "air," together and in combination with other terms. (*Id.* at 154-56.) Playtex's outside counsel also performed two other searches to view the results for the term "Ventaire" as one word and to measure the proliferation of the term "vent" in the category of goods such as baby feeding systems. (*Id.* at 156-58.) These two additional searches were conducted because Playtex was involved in the litigation over the mark "Avance" and they wanted a new name that was "safe." (*Id.* at 158.) All of these searches were compiled into reports and delivered to Playtex.

Powers was the ultimate decision maker on the selection of the new name after it had been "cleared" through outside legal counsel. He chose to market the term as one word with the "a" of the term "aire" capitalized. (*Id.* at 259-60.) He did so because he believed the term as one word looked more like a brand, "it laid out [on the package] better and was a more distinctive looking mark." (*Id.* at 260.) Based on all of the testimony presented at the hearing, the magistrate judge concluded that the defendant did not intend to confuse consumers when it selected its new name "VentAire" to replace the mark "Avance" for its anti-vacuum baby bottle. (Report at 35-36.)

Unlike the situation we were faced with in round one of this litigation over the mark "Avance," we are not convinced that defendant intended to palm off its product when it selected the new name "VentAire." While plaintiffs make several objections to certain evidence before the

Magistrate Judge,[7] it is clear that Playtex researched the availability of the word mark "VentAire" for use in the baby bottle market. It is also clear that the trademark search report results reveal several identical marks for different categories of goods and that the term "vent" alone, and in combination with the term "air," is widely used by third parties across all classes. (*See* Def.'s Ex. 9.) Such marks are entitled to a narrow scope of protection for its specific goods. *See Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627, 634 (7th Cir. 1968) (noting that the term "Mustang" had been extensively registered and used as a trademark on a variety of products, thereby entitling the various registrants to a limited scope of protection). While we determined previously that plaintiffs' "Avent" mark is a fairly strong mark entitled to protection, we were referring to the mark as a whole, and not dissected into the word "vent." Clearly, for purposes of this case, plaintiffs desire to boil its strong trademark down to the weak term "vent" for purposes of proving the similarity in sound, appearance and suggestion between its mark and "VentAire." However, even in doing so, plaintiffs cannot claim exclusive right to the term "vent," even though it may be the salient term in both the "VentAire" and "Avent" marks because the term "vent" is so widely used in a variety of names for a variety of goods and services. Thus, it was reasonable for Playtex to rely on the fact that proliferation of the term "vent" meant that it was probably a "safe" term to

---

[7] Plaintiffs object that Jeffrey Schwab was improperly permitted to testify at the hearing to legal opinion and he was an improper fact witness because he did not have personal knowledge to testify regarding the searches performed for Playtex. (Pls.' Objection at 53-56.) First, we do not find that Schwab's testimony impermissibly crossed the line into legal opinion on the ultimate fact issue. In fact, he carefully avoided testifying to such conclusions, only alluding to the information available to Playtex when it adopted the VentAire name. (R. at 153-56.) We also reject plaintiffs' argument that Schwab failed to have the personal knowledge to testify to the practice of his firm in researching the availability of the VentAire word mark. He adequately described what type of searches were conducted and the results therefrom. (R. at 153-58.)

incorporate into its new name, even if it meant that it would also be afforded little protection. This reliance cuts against any bad intent to palm off plaintiffs' product, especially because the term "vent" generally describes a prominent feature of Playtex's VentAire bottle.

As the magistrate judge acknowledged, and we concur, Playtex may have been, in its haste to find a new name, a little "sloppy" in its overall name selection process. However, based on our finding that there is no similarity in sound, appearance and suggestion between the two names, and the complete trademark search conducted by Playtex prior to adopting its new name "VentAire," we find no ill intent to palm off its VentAire product for that of plaintiffs' Avent baby bottle. In fact, unlike plaintiffs, we do believe the facts demonstrate that the outcome of the Avance preliminary injunction, even at the Report and Recommendation stage, sent a clear message to Playtex to steer clear of the Avance trademark. We cannot accept the plaintiffs' characterization of every Playtex move as an indication of bad intent. Accordingly, this factor does not weigh in favor of plaintiffs' claim of likelihood of confusion.

In sum, based on our previous finding in the Avance phase of this litigation, the Court finds that the Avent mark is strong and the products and the area and manner of concurrent use of the products are similar. While these three factors favor plaintiffs' claim of likelihood of confusion, the remaining factors do not help plaintiffs' case: the degree of care in purchasing is greater than most products with similar price points; there is no concrete, credible evidence that the marks are similar in sound, appearance and suggestion; and no evidence demonstrates that Playtex intended to confuse the consuming public into thinking that Playtex's VentAire bottle is related to, connected with, or sponsored by Avent. Finally, the lack of evidence of actual confusion is a neutral factor and does not weigh against the plaintiffs' case as they claim.

While there appears to be a numerical "tie," three factors favor plaintiffs' case and three do not (with the actual confusion factor neutral), the weight accorded to each factor is not equal. *See International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1087 (7th Cir. 1988). We believe more weight must be given to our findings that there is no or very little similarity between the marks in sound, appearance and suggestion and that consumers exercise care in selecting these products. These factors coupled with our findings that evidence showed Playtex harbored no intent to palm off demonstrate that plaintiffs have not successfully established that there is a better than negligible chance of success on the merits because they have not shown that a likelihood of confusion exists between the names. Accordingly we deny plaintiffs' motion to preliminarily enjoin Playtex from using the word mark "VentAire" on its anti-vacuum baby bottle.

## Conclusion

For the forgoing reasons, the Court adopts the Report of Magistrate Judge Keys and denies the plaintiffs' motion for a preliminary injunction.

**ENTER:**

UNITED STATES DISTRICT JUDGE

DATED: 3-15-00